UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHRYNE ANNE KURTH, on behalf of herself and others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>) No. 18 C 2785<br>v. )<br>) Judge Sara L. Ellis<br>THE HERTZ CORPORATION, )<br>)<br>Defendant. ) | |

**OPINION AND ORDER**

After Plaintiff Kathryne Kurth discovered that Hertz allegedly charged her a "concession fee recovery" at a location where it incurred no concession fee on five separate occasions when she rented a car from Hertz, she filed this putative class action against Defendant Hertz Corporation ("Hertz") for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and other state consumer fraud statutes. She also brings an unjust enrichment claim. In response, Hertz now brings a motion to compel arbitration and a partial motion to dismiss. Because Kurth's claims stemming from the first four transactions are governed by an arbitration agreement, the Court grants Hertz's motion to compel arbitration. Additionally, Kurth fails to state a claim for violation of ICFA or unjust enrichment regarding the fifth transaction because she was aware of the alleged deception when she entered into the fifth transaction, and so the Court partially grants Hertz's motion to dismiss.

**BACKGROUND**[1]

Between December 2017 and March 2018, Kurth rented cars on five separate occasions from Hertz at its location at 401 North State Street in Chicago, Illinois (the "State Street Location"). Each time, Hertz charged her a "concession fee recovery." Hertz defines "concession fee recovery" as a "fee to reimburse Hertz for concession/commission fees paid to the airport (hotel, train station, base, or agent) for each rental." Doc. 22 ¶ 15. However, the State Street Location is not located at a facility where Hertz would incur a concession fee.

Hertz operates a loyalty program called the Hertz Gold Plus Rewards Program (the "Gold Program"). Kurth enrolled in this program and signed an agreement regarding the Gold Program (the "Gold Agreement") that provides that the agreement "may be revised or supplemented from time to time by Hertz sending [Kurth] notice of such changes," and that "making a Program rental after the effective date of such changes will constitute [Kurth's] acceptance of such changes." Doc. 28-1 ¶ 4. Hertz updated the Gold Agreement in 2016, including an arbitration provision that provides that the parties agree to arbitrate any disputes between the parties, other than "claims for property damage, personal injury or death." Doc. 28 at 5. Hertz provided Kurth with notice of this change. Doc. 28-4 ¶ 4. The provision further states that "all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision." Doc. 28 at 5. Although it allows customers to opt out of the provision, Kurth did not choose to do so for the first four transactions

---

[1] The facts in the background section are taken from Kurth's amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving Hertz's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). For the purpose of resolving the motion to compel arbitration, the Court also considers exhibits and affidavits regarding the arbitration agreement in question. *Brown v. Worldpac, Inc.*, No. 17 CV 6396, 2018 WL 656082, at *2 (N.D. Ill. 2018).

at issue in this case. She did, however, opt out of the arbitration provision with regard to the fifth transaction, which occurred on March 15, 2018.

## LEGAL STANDARD

### I. Motion to Compel Arbitration

Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to codify the federal policy favoring the resolution of disputes through arbitration. *Kawasaki Heavy Indus. v. Bombardier Recreational Prods.*, 660 F.3d 988, 994 (7th Cir. 2011). Section 2 of the FAA states that contractual provisions "to settle by arbitration a controversy thereafter arising out of such contract or transaction" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Contract defenses, such as fraud, duress, and unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). The party seeking to avoid arbitration bears the burden of establishing why the arbitration agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

### II. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Motion to Compel Arbitration

Hertz argues that even the gateway questions of whether the arbitration agreement exists and covers the matters at issue in this case should be decided by an arbitrator. The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. The Court must enforce such agreements. *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 598 (7th Cir. 2015). However, there must be "clear and unmistakable evidence" that the parties agreed to delegate the issue of arbitrability to the arbitrator. *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *3 (N.D. Ill. Mar. 27, 2015).

Kurth did not submit any response to Hertz's motion to compel, effectively waiving any argument in opposition to its motion. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017) (noting that "[f]ailure to respond to an argument generally results in waiver");

4

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (finding that where a party fails to respond to a non-frivolous dispositive argument, it "acquiesces, rightly or wrongly" to that argument). However, even had Kurth challenged the delegation provision, she would not have prevailed. The delegation provision in the Gold Agreement clearly demonstrates the parties' agreement to send the threshold matter of arbitrability to the arbitrator. Another court within this circuit, when presented with the exact delegation provision present here, decided that the delegation provision was clear and it must send the matter to an arbitrator. *See Cooks v. Hertz Corp.*, No. 3:15-CV-0652-NJR-PMF, 2016 WL 3022403, at *4 (S.D. Ill. Apr. 29, 2016) ("There is nothing vague or ambiguous about this statement or the arbitration clause as a whole."). In light of the valid delegation clause, the Court grants Hertz's motion to compel arbitration with regard to the first four transactions at issue.

**II.     Motion to Dismiss**

Hertz also moves to partially dismiss Kurth's amended complaint. Hertz argues that the Court should dismiss Kurth's claims regarding the fifth transaction because Kurth was aware of the deception when she entered the fifth transaction.

To state a claim under ICFA, Kurth must plausibly allege (1) a deceptive act or practice by Hertz, (2) Hertz's intent that she rely on the deception, (3) the deception occurred during a course of conduct involving trade or commerce, and (4) actual damage as a result of the deception. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). To establish that the deception caused the damages alleged, "a plaintiff must show that he was actually deceived by the defendant's deception and that the deception proximately caused his damages." *Nava v. Sears, Roebuck and Co.*, 2013 IL App (1st) 122063, ¶ 21, 995 N.E.2d 303, 374 Ill. Dec. 164 (2013).

5

Kurth has failed to state a claim under ICFA for the fifth transaction because she cannot plausibly allege that her damages were caused by Hertz's deception. The fifth transaction occurred after Kurth filed this case, and so she cannot plausibly allege that Hertz deceived her when it charged the concession fee recovery in that fifth transaction. This case mirrors *Haywood*: there, the plaintiff brought an ICFA claim against a massage company for misrepresenting the length of time their massages would last. 887 F.3d at 331. After receiving only a fifty-minute massage that the defendant represented lasted an hour, the plaintiff booked a second massage and brought the same claim regarding the second massage. *Id.* at 333. The Seventh Circuit barred her claim for her second visit because, after the first visit, she could no longer plausibly claim that the defendant deceived her on the second. *Id.* The facts are the same here; if anything, there is more conclusive proof that Hertz could not have succeeded in deceiving Kurth on the fifth transaction, because she had already brought suit regarding that exact type of deception.

Kurth argues that her knowledge of the deceit should not be a barrier to her ICFA claim. According to Kurth, requiring that she be deceived is effectively an application of the voluntary payment doctrine, and Illinois courts have held that "when a plaintiff sufficiently pleads [an IFCA] claim based on a deceptive act or that is in the nature of fraud, the voluntary payment doctrine does not apply and is not a bar to the plaintiff's claims." *McIntosh v. Walgreens Boots All., Inc.*, 2018 IL App (1st) 170362, ¶ 17, *appeal allowed*, No. 123626, 2018 WL 4698918 (Ill. Sept. 26, 2018). The voluntary payment doctrine provides that "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal." *Id.* at ¶ 13. Kurth's interpretation of *McIntosh* is incorrect. In neither *McIntosh* nor the opinions upon which

*McIntosh* relies does an Illinois court dispense with the requirement that the plaintiff be deceived by the alleged deceptive act to state a claim under ICFA. In *McIntosh*, the court specifically found that the plaintiff alleged that he was unaware of defendant's deceptive act when he completed his purchases from defendant. *Id.* at ¶ 19. Similarly, in *Nava*, a case upon which *McIntosh* relies heavily, the court notes that the plaintiff testified that "he was unaware he was being overcharged" when the transaction occurred. 2013 Il App (1st) 122063 at ¶ 22. These courts have held that the voluntary payment doctrine does not apply to ICFA claims based upon deception, but they still require that plaintiffs properly plead the required elements of an ICFA claim. Kurth has not done so here. Because she cannot amend her claim to fix this deficiency, the Court dismisses her ICFA claims based on the fifth transaction with prejudice. *Haywood*, 887 F.3d at 335.

    Finally, the failure of Kurth's ICFA claim also bars any unjust enrichment claim stemming from the fifth transaction. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ('[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").[2]

---

[2] Hertz also includes argument in its motion to dismiss that the Court lacks personal jurisdiction and subject matter jurisdiction over portions of Kurth's class action claims. Because the Court's opinion sends some of Kurth's claims to arbitration and disposes of the rest of Kurth's claims on the merits, and Kurth has not yet moved for class certification, Kurth's class action claims are no longer properly before the Court and so the Court need not address these arguments at this time.

7

## CONCLUSION

For the foregoing reasons, the Court grants Hertz's motion to compel arbitration [27] and grants Hertz's motion to dismiss [24] with prejudice regarding claims stemming from Kurth's fifth transaction with Hertz. The Court stays this case pending arbitration.

Dated: October 24, 2018

                                                           SARA L. ELLIS
                                                           United States District Judge